**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dawn Marie Annett Conry,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-02139-PHX-DLR<br><br>Consolidated with:<br>No. CV-22-2140-PHX-DLR<br><br>**ORDER** |

Claimant Dawn Conry filed an application for Social Security Disability Insurance benefits on May 31, 2019 and then filed an application for Supplemental Security Income benefits on December 10, 2019. (AR. 294–304.) She alleged a disability beginning March 7, 2018. (AR. 294.) Her last insured date was December 31, 2023 (AR. 22.) The Social Security Administration denied her claims initially and again on reconsideration. (AR. 125, 142.) After an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (AR. 17.) The Appeals Council denied review of the decision, making the ALJ's finding the final decision of the Commissioner of the Social Security Administration. (AR. 1.) Conry seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

**I.     Standard**

To determine whether a claimant is disabled, the ALJ engages in a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof for the first

four steps, but the burden shifts to the Commissioner at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically considered disabled. Otherwise, the ALJ moves to the fourth step, where she assesses the claimant's residual functioning capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is not so capable, as the fifth and final step, the ALJ must determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

This Court reviews only those issued raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). An ALJ's factual findings are "conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quotation and citation omitted). Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quotations and citations omitted). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). The substantial evidence standard is a "highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

**II.    Analysis**

Conry raises three issues for the Court's consideration: (1) whether the ALJ erred at step three of the five-step process; (2) whether the ALJ properly evaluated two medical

- 2 -

opinions; and (3) whether the ALJ properly evaluated Conry's symptom testimony. She later moved the Court for leave to submit supplemental documents. The Court will first address Conry's motion and then each of her challenges to the ALJ's decision in turn.

### a. The Court denies Conry's motion because she has not demonstrated good cause nor shown that the proffered documents are likely to change the outcome of her case.

Conry moves the Court for leave to supplement the record with additional documents. (Doc. 23.) Under 42 U.S.C. § 405(g), this Court is limited in its review of the Commissioner's decision and cannot consider new evidence in its review of the ALJ's decision. However, the Court can and will construe Conry's motion as a motion for remand based on new evidence. *See Becknell-Jones v. Comm'r of Soc. Sec.*, No. 5:13-cv-218-Oc-18PRL, 2013 WL 5556258, at *1 (M.D. Fla. Oct. 8, 2013). "To justify a remand, the claimant must show that there is 'good cause' for her failure to offer the evidence at the administrative level and that there is a reasonable possibility that the evidence would change the outcome." *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985); *see* 42 U.S.C. § 405(g). Conry has not made the requisite showing. She submitted pay stub copies and "transitional work agreement dates" but no explanation as to why they should be included in the record or why they were not submitted at the administrative level. Moreover, the documents appear to be inconsequential to the outcome of her case. The Court can discern no reasonable possibility that this evidence would have changed the ALJ's decision. Conry's motion is denied.

### b. Conry waived any argument that the ALJ erred at step three of the five-step process.

In her opening brief, Conry cites 20 C.F.R. § 404.1526, which explains how the ALJ performs the analysis at step three of the five-step process. (Doc. 16 at 5, 21.) The Commissioner and the Court understand this as a challenge to the ALJ's step three analysis. But the citations are unaccompanied by any legal argument or facts that would support an argument that the ALJ erred at step three. The decision itself doesn't provide

an obvious basis for an objection; the ALJ provided an extensive explanation of how she evaluated Conry's impairments using the "paragraph B" criteria. (AR. 23–24.) Because the argument is undeveloped, the Court considers it waived. *See Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

### c. Both challenged evaluations of medical opinions are supported by substantial evidence.

For claims filed on or after March 27, 2017, like Conry's, ALJs give no specific evidentiary weight to any medical opinion. 20 C.F.R. § 416.920c(a). Instead, an ALJ is required to consider all medical opinions and articulate how persuasive she finds them. *Id.* § 416.920c(b). The ALJ considers several factors in assessing the persuasiveness of a medical opinion, but she need only articulate in her decision her findings regarding the supportability and consistency of the opinion with other evidence in the record. *Id.* § 416.920c(b)(2). Supportability examines the relevant objective medical evidence and supporting explanations presented by the source. 20 C.F.R. § 404.1520c(c)(1). Consistency examines the evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2).

Conry challenges the ALJ's evaluations of opinions from a consultative examiner, Glenn R. Kunsman, D.O. and Conry's hand specialist, Carter B. Lipton, M.D.

### i. Dr. Kunsman

The ALJ found Dr. Kunsman's opinion somewhat persuasive. (AR. 34.) Dr. Kunsman opined that Conry can lift and carry ten pounds frequently, can stand or walk six to eight hours in an eight-hour workday, has no limitations on sitting, and can frequently climb, balance, kneel, stoop, crouch, crawl, reach, handle, finger, and feel. (AR. 702–03.) But the ALJ found that these limitations were not consistent with medical evidence that indicated residual carpal tunnel syndrome ("CTS") following surgery and Conry's hip and knee pain. (AR. 34.) And the ALJ highlighted the lack of support for Dr. Kunsman's opinions from his own treatment records. (*Id.*) For example, Dr. Kunsman's

opinion stated that Conry had decreased grip strength, which was in direct opposition to his observation that she had normal grip strength. (AR. 33, 699.) In any event, the ALJ's RFC determination was more limiting than Dr. Kunsman's opinion, so any error in assessing this opinion was harmless. *Burch v. Barnhart*¸ 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."); *see also Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

### ii. Dr. Lipton

The ALJ found Dr. Lipton's opinions somewhat persuasive. (AR. 33.) Dr. Lipton provided several different opinions about Conry's limitations with differing degrees of restrictions in each. (AR. 567, 572–75.) The ALJ subscribed to Dr. Lipton's March 2019 opinion that Conry could lift and carry at least ten pounds frequently and could perform six hours of repetitive activity for two hours at a time with a twenty-minute break in between. (AR. 33, 567.) These limitations are consistent with Dr. Lipton's findings of improved hand strength and lack of persistent upper extremity sensory deficits following operations on her hands. (AR. 582.) In fact, Dr. Lipton's treatment notes showed significant improvement in Conry's hand strength between October 2018 and March 2019. (AR. 568, 575.) The ALJ also found that Dr. Lipton's March 2019 opinion was consistent with other evidence in the record, including Conry's daily activities, "which suggest an ability to use her hands for handling and fingering on a frequent basis." (AR. 34.)

The ALJ properly evaluated both the supportability and consistency of Dr. Lipton's opinions by comparing those opinions with Dr. Lipton's treatment records and other evidence in the record. In arguing otherwise, Conry points to a note from Dr. Lipton on March 2019 that stated that Conry still experienced "mild residual symptoms related to her [CTS] and based on the findings of her functional Capacity Exam, and based on discussion with her, [Dr. Lipton] feel[s] that there will be permanent work restrictions." (AR. 568.) This note does not reveal a glaring lack of support for Dr. Lipton's opinion,

nor does it appear that the ALJ ignored it. Dr. Lipton opined to work limitations resulting from Conry's impairments—specifically, limitations to accommodate CTS. The ALJ incorporated those limitations to determine Conry's RFC.

It may be the case that Dr. Lipton's treatment note could support stricter limitations, but that is not for this Court to decide. *See Burch¸* 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). It is not the role of this Court to "substitute its judgment for that of the [ALJ.]" *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ properly articulated how persuasive she found Dr. Lipton's opinion, and her findings are supported by substantial evidence.

### d. The ALJ provided clear and convincing reasons supported by substantial evidence for discrediting Conry's testimony as to the severity and persistence of her symptoms.

Proper evaluation of a claimant's symptom testimony requires the ALJ to perform a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2017). If the claimant presents such evidence and absent evidence of malingering, the ALJ may reject the claimant's testimony as to the severity of her symptoms "by offering specific, clear and convincing reasons for doing so." *Id.*; *Garrison*, 759 F.3d at 1015.

The Court will uphold the ALJ's decision so long as she has provided legally sufficient reasons for rejecting the claimant's testimony, even if the ALJ did not "clearly link [her] determination to those reasons." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). "Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004) (quotations and citation omitted).

Here, Conry testified that symptoms produced by her CTS precluded her from working full time. (AR. 63–34.) She shared that she underwent surgical amputation of her foot to create a pad at the end of her leg so that she could walk, but the stump is prone to developing painful ulcers. (AR. 66, 68.) Further, her prosthetic leg causes knee and hip pain. (AR. 68–69.) Conry stated that she can only stand or walk for forty-five minutes before needing a break due to numbness and tingling in her hands and arms. (AR. 69.) She can only type for thirty minutes before needing a rest due to the same numbness and tingling. (AR. 69–70.) When she is not using medication for her depression, Conry sometimes finds it difficult to get out of bed and move around. (AR. 73–74.)

The ALJ found that Conry's symptom testimony was inconsistent with the objective medical evidence, her positive response to treatment, and her reported daily activities. Consideration of each of these factors in evaluating symptom testimony is appropriate. *Smartt v. Kijakazi*, 53 F.4th 489, 498 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("[A]n ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

Indeed, the objective medical evidence demonstrated that Conry had only mild bilateral CTS and "no electrodiagnostic evidence of any other focal nerve entrapment, brachial plexopathy, or cervical radiculopathy." (AR. 623.) Repeat studies following wrist surgery and injections showed significant improvement in her symptoms. (AR. 571, 591, 987, 1006.) X-rays of Conry's wrists from March 2018 showed that her wrists were "normal-appearing" aside from an abnormality of the pisiform in her right wrist and some flattening of the radius in her left. (AR. 28, 607.) A consultative examiner determined that Conry had normal grip strength and full strength in her upper extremities. (AR. 29,

699.) On examination, Conry exhibited normal fine motor skills; she was able to pick up small coins from the ground and screw a nut into a bolt without difficulty. (AR. 29, 699.) The ALJ also pointed to a January 2020 hip X-ray that was "essentially unremarkable." (AR. 941.)

The ALJ also highlighted Conry's positive responses to treatment. (AR. 29.) Conry underwent surgery on her wrists, and afterwards she reported feeling "markedly better." (AR. 29, 574.) Indeed, after surgery and post-operative occupational therapy, Conry reported that she could type for up to two hours before experiencing discomfort. (AR. 29, 574.) Conry has also taken gabapentin, hydrocodone, and methocarbamol, which have improved her hip pain and the numbness and tingling in her hands. (AR. 29–30, 566, 635.) On the other hand, the ALJ also properly noted instances where Conry failed to follow her prescribed treatment plan. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") For example, though her primary care provider continued to refill pain medication, Conry reported using it "very sparingly." (AR. 30, 1024.)

And the ALJ observed that Conry performs several independent daily activities, including making art collages and attending community art classes, using a computer, driving, preparing meals from scratch, and doing laundry. (AR. 31, 358‒60, 366–67, 369–70, 444.) These activities "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). The longitudinal record also shows that Conry has dealt with many of her conditions from birth. She had her leg amputated as a child and has been using a prosthetic leg for years; resulting hip and knee pain have always accompanied her prosthesis use. (AR. 13.) Conry has congenital issues with her hands and was born with shorter fingers, but she worked for years despite those issues. (AR. 982.) The fact that Conry dealt with these conditions while maintaining employment undercuts her claim that these conditions are disabling and preclude all work. Given the ALJ's consideration of the medical evidence, Conry's treatment history,

and Conry's daily activities, her evaluation of Conry's symptom testimony was proper and supported by substantial evidence.

**IT IS ORDERED** denying Claimant Dawn Marie Annett Conry's motion for leave to file supplemental documents (Doc. 23).

**IT IS FURTHER ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 24th day of September, 2024.

Douglas L. Rayes
Senior United States District Judge